OPINION
{¶ 1} Defendant-appellant, Russell T. Harper, appeals his conviction and sentence from the Licking County Court of Common Pleas for one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, with a specification that the offense was committed in the vicinity of a juvenile, making it a second degree felony.
 {¶ 2} Appellant waived his right to a jury trial and he was tried to the court on October 22, 2007.
 {¶ 3} The following evidence was adduced at trial.
 {¶ 4} The State presented the testimony of six pharmacy technicians from various stores in the Newark area that a Russell or Russ Harper living at 85 Gay Street, Newark, Ohio obtained various quantities of products containing pseudoephedrine during May and June 2007. The technicians testified a photo I.D. is required to obtain the products from the pharmacy.
 {¶ 5} A detective with the Licking County Sheriff's Office, assigned to the Central Ohio Drug Enforcement Task Force, testified that pseudoephedrine is a critical ingredient of methamphetamine. He further reviewed the pharmacy store records and discovered that on May 14th, appellant made purchases of pseudoephedrine at two different stores only ten minutes apart; on June 8th, appellant made two purchases 18 minutes apart at two different stores; and on June 15th, appellant made three purchases of Sudafed within one hour at three different stores.
 {¶ 6} In addition, an intake caseworker from Licking County Children Services testified she received a referral on June 28, 2007, regarding a Russell Harper and *Page 3 
Amanda Bevans. The referral alleged that there was drug use and meth making in a house located at 85 Gay Street in Newark and young children were being neglected. She visited the home that day and found it extremely dirty. She observed pieces of foil with white residue, a bunch of ether cans and starter fluid cans, batteries and computer parts and knives everywhere. She observed burning batteries in a fire pit outside. She took the children for medical exams and made plans for the children to reside with other family because of the conditions in the home. She contacted the police.
 {¶ 7} The caseworker was accompanied by a probation officer of the Licking County Municipal Court as appellant had failed to report or comply with the other terms of his probation on an earlier theft charge. Although the probation officer did not find appellant at the house, he observed in a closet a big glass jar with an orange liquid in it with a white solid mass floating in the bottom of it. He also found two starter fluid cans with holes punched in the bottom and lithium batteries. He further testified that he had received specialized training in meth lab identification and that his observations of the items at the home were possible indications of a meth lab.
 {¶ 8} Amanda Bevans testified that she resided at 85 Gay Street with her four children, the appellant, and approximately seven other people. She stated appellant was at a burn pile in the backyard that morning to burn moving boxes; that appellant had a knife collection; and that she used batteries for the children's toys, her digital camera and remote controls. She explained that she has allergies to many things and took over-the-counter medicines but could not recall if appellant purchased those medicines for her. One of her children has asthma and used a nebulizer for taking medicine. The nebulizer uses plastic tubing. The starter fluid, she explained, was for *Page 4 
the children's go-carts and the lawn mower. She testified that her children and most of the children in the neighborhood are at her home because she has an "open-door" policy.
 {¶ 9} Other residents of 85 Gay Street and relatives of appellant testified regarding everyday uses of certain items in the house such as lye drain opener for clogged pipes, alcohol to clean wounds and tubing for a fish tank. It was also related that the orange liquid was paint thinner left at the home by a prior tenant.
 {¶ 10} In addition, two detectives with the Licking County Sheriff's Office, also assigned to the Central Ohio Drug Enforcement Task Force, testified the items are common with the manufacture of methamphetamine and explained the process for "cooking" the ingredients to make the drug. This process involves the use of a hydrochloric acid gas generator. A homemade gas generator was found in the burn pile in the backyard. It is comprised of a pop bottle with tubing. It was "actively gassing" when found by officers which indicated recent use. In addition, the officers found a glass pipe that is typically used to smoke methamphetamine. Also, an item known as a straw, with a whitish coating on the inside was found at the home. The State presented photographs depicting items which were located inside and outside the home.
 {¶ 11} Scientific tests were performed on the straw, but it contained an insufficient amount of residue to perform a confirmatory analysis, which would give a positive identification of the substance. Rather, a presumptive analysis was performed indicating that the tubing contained an amphetamine type substance, which is a component of methamphetamine. Amphetamine is a Schedule II substance.
 {¶ 12} No fingerprints or DNA were taken from the items. *Page 5 
 {¶ 13} At the conclusion of the case, the court found appellant guilty as charged and sentenced appellant to a mandatory three year prison sentence.
 {¶ 14} Appellant timely appeals and raises four Assignments of Error:
 {¶ 15} "I. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION OF ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS.
 {¶ 16} "II. THE COURT ERRONEOUSLY OVERRULED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
 {¶ 17} "III. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 18} "IV. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE U.S. AND OHIO CONSTITUTIONS DUE TO COUNSEL'S FAILURE TO OBJECT TO WITNESSES TESTIFYING AS EXPERTS WHO HAD NOT BEEN QUALIFIED BY THE COURT, ELICTING HARMFUL TESTIMONY, FAILURE TO OBJECT TO IMPROPER REBUTTAL, FAILURE TO OBJECT TO HEARSAY TESTIMONY, AND FAILURE TO RENEW A RULE 29 MOTION AT THE CLOSE OF ALL THE EVIDENCE."
 I., ll., lll. {¶ 19} Harper argues that his conviction was based upon insufficient evidence, was against the manifest weight of the evidence and the trial court erred in overruling a motion for acquittal.
 {¶ 20} Because Assignments of Error I, II and III are related, we address them together. *Page 6 
 {¶ 21} When an appellant challenges the sufficiency of the evidence, we must determine whether the State presented adequate evidence on each element of the offense. See State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541. To determine if a conviction is supported by sufficient evidence, this court views the evidence in a light most favorable to the prosecution and determines whether any rational jury could have found that the essential elements of the offense had been proved beyond a reasonable doubt.
 {¶ 22} This test is essentially the same one employed by a trial court in ruling upon a Crim. R. 29 motion for acquittal. State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus ("a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.")
 {¶ 23} On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, this court reviews the record, weighs the evidence, considers the credibility of the witnesses and determines whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Thompkins, supra at 387.
 {¶ 24} R.C. 2925.041, Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, provides:
 {¶ 25} "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule l or ll with the intent to manufacture a controlled substance in schedule l or ll in violation of section 2925.04 of the Revised Code. *Page 7 
 {¶ 26} "(B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule l or ll, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section.
 {¶ 27} "(C) Whoever violates this section is guilty of illegal assembly or possession of chemicals for the manufacture of drugs. Except as otherwise provided in this division, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the third degree * * *. If the offense is committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree * * *.
 {¶ 28} R.C. 2925.01(B) provides:
 {¶ 29} "An offense is `committed in the vicinity of a juvenile' if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually view the commission of the offense."
 {¶ 30} "Possession may be actual or constructive (citations omitted). Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does *Page 8 
not have the item within his immediate physical possession (citations omitted)". State v. Kingsland, 177 Ohio App.3d 655, 660, 2008-Ohio-4148.
 {¶ 31} Methamphetamine is a controlled substance as listed in Schedule ll. R.C. 3719.41, Schedule II (C)(2).
 {¶ 32} Applying the law to the evidence adduced at trial, it was established by the State that a person identified as Russ or Russell Harper made numerous purchases of pseudoephedrine from several Newark stores in May and June, 2007. On June 28, 2007, appellant resided at 85 Gay Street along with Ms. Bevans and her young children, as well as other individuals. It was also established by Ms. Bevans' testimony that appellant was in the residence that morning playing video games and that he had been burning materials in the backyard. An active homemade generator that is typically used in the process of manufacturing methamphetamine was in the burn pile. There were lithium batteries, tubing, starter fluid, alcohol, paint thinner, drain cleaner located within the residence, which experienced law enforcement officers testified were ingredients and supplies for a methamphetamine lab. Many of these items were located in the living room, kitchen and backyard of the residence where children were found.
 {¶ 33} Although there was no eyewitnesses testimony that appellant was actually producing methamphetamine, the direct and circumstantial evidence indicates appellant was in possession (actual or constructive) of ingredients and supplies that form a necessary chain in the production of methamphetamine. Furthermore, such possession occurred within one hundred feet of Ms. Bevan's children.
 {¶ 34} Having reviewed the evidence in this case, along with the reasonable inferences that can be drawn there from, there was certainly enough credible evidence *Page 9 
in the record to find that the conviction is both supported by sufficient evidence and the manifest weight of the evidence.
 {¶ 35} Appellant's first, second and third Assignments of Error are overruled.
 IV {¶ 36} In the final assignment of error, appellant alleges that his attorney's performance fell below an objective standard of reasonable representation, and that, but for his attorney's performance, a reasonable probability existed that appellant would have been found not guilty. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 37} First, he argues that his attorney failed to object to the testimony of two detectives who offered opinion testimony without being qualified as experts. Both detectives (Brill and Cortright) testified that the items found at the residence were, in their opinion, evidence of methamphetamine production and explained the process for making methamphetamine.
 {¶ 38} Evid. R. 701 provides:
 {¶ 39} "Opinion Testimony by Lay Witness
 {¶ 40} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 41} Lay opinion, inferences, impressions or conclusions are therefore admissible if they are those that a rational person would form on the basis of the *Page 10 
observed facts and if they assist the jury in understanding the testimony or delineating a fact in issue. State v. Kehoe (1999),133 Ohio App.3d 591, 729 N.E.2d 431.
 {¶ 42} Evid. R. 701 affords the trial court considerable discretion in controlling the opinion testimony of lay witnesses. City of Urbana exrel. Newlin v. Downing (1989), 43 Ohio St.3d 109, 113, 539 N.E.2d 140; see also, Kehoe, at 603.
 {¶ 43} Both detectives testified as to their extensive training and experience in the field of methamphetamine manufacturing. Their general testimony regarding the manufacturing process was certainly helpful to the trier of fact in identifying the role of the ingredients in the process and the equipment necessary in production of methamphetamine. Their opinion testimony was rationally based upon their personal observations at the residence.
 {¶ 44} Under the circumstances, the detectives' testimony meets the requirements of Evid. R. 701 and therefore, we cannot say that defense counsel's failure to object fell below an objective standard of reasonable representation.
 {¶ 45} Appellant next argues his attorney brought out harmful testimony during the defense's case from Ms. Bevans by eliciting that she tested positive for methamphetamine after this incident. Both the State and defense called Ms. Bevans on direct examination. In the State's case, she testified that she no longer had a relationship with appellant; that appellant had told her that another individual (a Bobby Barnhart) that lived at the residence was cooking meth and the appellant was being framed.
 {¶ 46} For the defense, Ms. Bevans was called and questioned about her positive test result and later asked about the method she used to abuse the illegal *Page 11 
substance. The State objected to the testimony and the question was withdrawn by defense counsel.
 {¶ 47} Throughout the trial, it was the defense's position that a meth lab did not exist at the residence and that all of the items obtained as evidence (e.g. tubing, drain cleaner) had legitimate purposes. However, it was brought out in the State's case that others at the residence, not appellant, were potentially involved in making the drugs. Asking Ms. Bevans about her subsequent meth use could have helped bolster a secondary defense that it was not appellant, but others, possessing the items at the residence for manufacturing of methamphetamine.
 {¶ 48} Thus, in viewing counsel's questioning of Ms. Bevans in context of the entire case, we find said questioning to be part of a trial strategy and was not improper.
 {¶ 49} Next, appellant claims counsel failed to object to improper rebuttal testimony offered by the State. At trial, the State called in rebuttal a civilian dispatcher to testify that a Russell T. Harper, 85 Gay Street, had obtained a driver's license or state identification card on February 27, 2007.
 {¶ 50} We note the defense initially raised this issue in its case when the appellant's mother, Judy Owens, testified as follows:
 {¶ 51} "Q: To your knowledge, does Russell Harper have a driver's license?
 {¶ 52} "A: No, he does not.
 {¶ 53} "Q: Why?
 {¶ 54} "A: He got them taken away several years ago. I believe he could get them back, but I think he owes reinstatement fees and stuff to 16, 18 hundred dollars. I don't think he's had a driver's license for at least ten years." *Page 12 
 {¶ 55} T. at 241.
 {¶ 56} Presumably, this testimony was presented to negate the testimony of the pharmacy technicians in the State's case who testified that a photo I.D. was required to purchase pseudoephedrine.
 {¶ 57} We agree with the State that the defense opened the door for the State to rebut this issue and therefore, it would have been improper for appellant's counsel to object to the rebuttal testimony.
 {¶ 58} We further note this case was tried to the bench, rather than to a jury. "[I]n a bench trial, a trial court is presumed to have considered only the relevant, material and competent evidence."State v. Addison, 10th Dist. No. 03AP-1102,2004-Ohio-5154, at ¶ 10, citing State v. Bays (1999), 87 Ohio St.3d 15,28, 716 N.E.2d 1126. Thus, we must presume that, even if any testimony was erroneously admitted into evidence, the trial court did not consider it in rendering its verdict.
 {¶ 59} Lastly, appellant argues defense counsel erred in failing to renew a Crim. R. 29 motion at the close of all the evidence. However, the record reflects a motion for acquittal was in fact made at the end of closing arguments. T. at 349. Therefore, appellant's contention is without merit.
 {¶ 60} We find counsel was not ineffective for the reasons espoused by appellant.
 {¶ 61} The fourth Assignment of Error is overruled. *Page 13 
 {¶ 62} The judgment of the Licking County Court of Common Pleas is affirmed.
By: Delaney, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1