[Cite as *State v. David*, 2021-Ohio-4004.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210227 |
| | | TRIAL NO. 21CRB-3010 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| CLAYTON DAVID, | : | |
| | | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 10, 2021

*Andrew W. Garth*, City Solicitor, *William T. Horsley*, City Prosecutor, and *Connor E.Wood*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Clayton David appeals his conviction, after a bench trial, for domestic violence, in violation of R.C. 2919.25(A). David contends his conviction must be reversed because the testimony of the prosecuting witness was not credible and the trial court improperly admitted evidence of uncharged "other acts" in contravention of Evid.R. 404(B). For the following reasons, we affirm.

### Background Facts and Procedure

{¶2} David was charged with domestic violence against Destiny Cook relating to an incident that occurred on the evening of February 20, 2021, at Cook's house. At that time, David and Cook had been in a long-term romantic relationship and shared one child, A.D., a four-year-old daughter.

{¶3} Cook testified that the incident began shortly after she returned to her house with A.D. They entered through the front door and expected to find an empty house because she and David had broken up and he was not supposed to be there. When she saw David on the stairs, she accused him of mistreating another one of her children. David "darted" down the steps and "attacked" A.D. Cook then dove atop A.D. to protect her. David began lashing Cook and A.D. with a leather belt. Cook tried to escape out the front door with A.D. but tripped. David then resumed the lashing and struck A.D.'s elbow, causing a welt where the metal buckle made contact with her body. When the attack stopped, Cook pretended the attack had not happened to avoid further harm.

{¶4} After putting A.D. to bed in an upstairs bedroom and telling David she was not going to call the police, Cook seized an opportunity to go into the bathroom and quickly sent a text message to her sister, apparently alerting her to the situation. Cook then went back downstairs and David followed her. When he caught up to her,

2

David grabbed her and dragged her to the kitchen where he choked her with his hands until she lost consciousness. The choking left red marks on her neck.

{¶5} Cook awoke lying on the floor and shaking. David helped her to her feet. Cook's sister arrived, followed by the police, whom her sister had called. Cook did not seek medical attention for her injuries, but showed the investigating police officer the marks on her neck and the welt on A.D.'s elbow. The police officer took a photograph of the marks on Cook's neck, and that photograph was admitted into evidence during the officer's testimony. While the officer did not photograph A.D.'s injury, he testified that he saw the welt.

{¶6} David's testimony contradicted that of Cook's in many respects. He said that on the night of the altercation, he and Cook were not completely broken up, as he had told her he would not move out of the house until he received his tax return. Further, he contended that Cook could not have entered through the front door of the house that evening, because he had latched the chain on the front door in addition to locking the door with a key. He believed, based on sounds he heard, that Cook entered through a window and then tripped on furniture, potentially injuring her neck.

{¶7} David additionally testified that he did not harm Cook or A.D. at all that evening. According to David, when he came downstairs to confirm it was Cook and A.D. who entered, he and Cook argued over his Facebook posts. Thinking that she was baiting him into doing something so she could call the police, he returned upstairs to play video games. He eventually returned downstairs because Cook was "talking crazy" in front of A.D., accusing him of dragging Cook's older child by the hair. When he took control of A.D. and asked her questions about the accusation, Cook "yanked" A.D. out of his hand and yelled at him. The arguing ended without a

physical confrontation and he returned upstairs. A short time later, Cook's sister appeared and the arguing restarted. Two or three minutes later, the police arrived.

{¶8}    After considering this evidence, the trial court found David guilty of committing domestic violence against Cook. David now appeals.

{¶9}    In his first assignment of error, David contends that his conviction for domestic violence was against the manifest weight of the evidence. The offense of domestic violence is proscribed in pertinent part by R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." David argues Cook's testimony that he harmed her was not credible.

{¶10}  We have reviewed the entire record, and we do not find that the trial court lost its way and created a manifest miscarriage of justice when it credited Cook's testimony and discredited David's. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The credibility of witnesses is a question primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶11}  Cook's testimony that David had whipped her as she protected A.D. was corroborated to some degree by the investigating officer's testimony that he saw a welt on A.D's elbow. Additionally, Cook's testimony that David had choked her was corroborated by the photograph of the red marks on her neck and the testimony of the investigating officer who saw the marks. David's explanation of those injuries was not compelling. Because David's conviction was not against the manifest weight of the evidence, we overrule David's first assignment of error.

{¶12}  In his second assignment of error, David argues the trial court erred by admitting evidence of uncharged misconduct over his objection. The challenged

4

evidence involved Cook's testimony that David physically attacked A.D. shortly after she and A.D. entered the house, and the investigating officer's testimony that he observed an injury on A.D.'s elbow, which corroborated Cook's unobjected-to testimony that David had struck A.D. with a belt during his assault on Cook.

{¶13} David maintains this testimony was inadmissible because he was not on trial for assaulting A.D. and it was simply propensity evidence. He cites the provision of Evid.R. 404(B) that forbids evidence of "other crimes, wrongs, or acts" to prove the defendant's character or propensity to commit crime, but allows such evidence under proscribed circumstances when it is "probative of a separate, nonpropensity-based issue." *See State v. Hartmann*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22.

{¶14} Evid.R. 404(B), however, does not apply to acts that are not "independent" of the charged crime. *State v. Mann*, 19 Ohio St.3d 34, 482 N.E.2d 592 (1985), paragraph one of the syllabus ("Prosecution evidence that a defendant has committed other crimes, wrongs or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts.").

{¶15} We realized this distinction in *State v. Green*, 117 Ohio App.3d 644, 691 N.E.2d 316 (1st Dist.1996), involving a prosecution for the armed robbery of a bank and the receipt of stolen property. In part, we determined that evidence showing the defendant was involved in a car accident 45 minutes after the robbery, while driving a car similar the car reported as fleeing the bank, and that he left the accident scene, was not "other acts" evidence governed by Evid.R. 404(B). We arrived at this conclusion because "[t]he evidence concerning the automobile accident and subsequent conduct of [Green] is 'an integral part of the immediate

context' of the armed robbery charge and tends 'logically to prove' that appellant was the perpetrator." *Id.* at 654, citing *State v. Long*, 64 Ohio App.3d 615, 617, 582 N.E.2d 626 (9th Dist.1989); *see State v. Rocker*, 10th Dist. Franklin No. 97APA10-1341, 1998 WL 614610 (Sept. 1, 1998) (Testimony that marijuana was found on defendant's person after his arrest for constructive possession of cocaine was not "other acts" evidence for purposes of Evid.R. 404(B) in a prosecution for possession of cocaine, where that evidence tied defendant to cocaine found under the seat of a car in close proximity to further quantities of marijuana); *State v. Bogan*, 8th Dist. Cuyahoga No. 72278, 1998 WL 456498, *2 (Aug. 6, 1998) ("Evid.R. 404(B) does not apply if the acts in question are intrinsic as opposed to extrinsic, i.e. the acts are part of the events in question or form part of the immediate background of the alleged act which forms the basis for the crime charged").

{¶16} This analysis is similar to the Ohio Supreme Court's discussion of the admissibility of conduct demonstrating "scheme, plan or system" under R.C. 2945.59, which codifies the exceptions to the general rule concerning evidence of uncharged misconduct. *See State v. Curry*, 43 Ohio St.2d 66, 72-73, 330 N.E.2d 720 (1975). The *Curry* court recognized "two general factual situations" implicating that exception to the prohibition on evidence of other acts. *Id.* at 73. Relevant here is the first situation, where "the 'other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment." *Id.*, cited in *State v. Wilkinson*, 64 Ohio St.2d 308, 316, 415 N.E.2d 261 (1980).

{¶17} This admissibility theory is referred at times to as the "res gestae" doctrine. Weissenberger, *1 Ohio Evidence Library*, Section 404.28 (2021). The evidence of uncharged misconduct involves events "inextricably intertwined and, thus, necessary to give the complete picture of what occurred." *Wilkinson* at 318.

{¶**18**}  David argues evidence pertaining to uncharged allegations of abuse of A.D. implicate and contravene Evid.R. 404(B).  But David's initial attack on A.D. immediately preceded his assault on Cook, and that assault explained why Cook was on top of A.D. as a protective measure when David struck Cook with a belt, an explanation central to understanding the sequence of events relating to the charged offense.  Similarly, the police officer's testimony that A.D. appeared to have an injury from being lashed by a belt was evidence that David lashed Cook, as it occurred at the same time that David lashed Cook.

{¶**19**}  Thus, the evidence of the uncharged misconduct, which occurred contemporaneously with the crime charged, added meaning and context to the victim's testimony.  These are not acts collateral to the charged offense but evidence logically proving that David knowing caused or attempted to cause physical harm to Cook.  The contested evidence is "inextricably intertwined and, thus, necessary to give the complete picture of what occurred."

{¶**20**}  Because the challenged evidence of David's abuse of A.D. concerns events "inextricably intertwined" with the charged offense, the challenged evidence was not subject exclusion under Evid.R. 404(B).  Consequently, we overrule the second assignment of error.

## Conclusion

{¶**21**}  We affirm the trial court's judgment convicting David of domestic violence.

Judgment affirmed.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.