[Cite as *State v. Slaughter*, 2026-Ohio-1190.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,               :

      Plaintiff-Appellee,      :

                                 No. 115252

      v.                       :

DEON SLAUGHTER,        :

      Defendant-Appellant.   :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 2, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-693907-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alexandria Serdaru, Assistant Prosecuting Attorney, *for appellee.*

Maxwell Martin, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Deon Slaughter appeals from his judgment of conviction, which was rendered after a jury trial. Appellant was convicted on one

count of strangulation and one count of domestic violence. After a thorough review of the facts and pertinent law, we affirm.

### Indictment

{¶ 2} In July 2024, a Cuyahoga County Grand Jury charged appellant in a six-count indictment as follows: Count 1, felonious assault, Count 2, second-degree felony strangulation, Counts 3 and 4, third-degree felony strangulation, Count 5, domestic violence with a furthermore clause, and Count 6, misdemeanor assault.

### Testimony About a Dismissed Case Against Appellant

{¶ 3} Prior to the start of trial, the State informed the trial court that it intended to elicit testimony from the victim about a case against appellant in which the within victim was also the victim. The case was dismissed the day before the incident in this case occurred, and thus, the State contended the circumstance of the other case being dismissed was "connected or blended" with the background of this case. The assistant prosecuting attorney told the court that she had instructed the victim not to talk about the facts of the dismissed case; she could only testify that there had been another case against the defendant and it was dismissed in the hours leading up to the within incident.

{¶ 4} The defense objected on the ground that the intended testimony would constitute evidence of other crimes, wrongs, or acts under Evid.R. 404(B) and the State had not filed a notice that it intended to elicit the testimony.

{¶ 5} The trial court overruled the defense's objection and cautioned the State to "tread extremely carefully in not drawing undue attention" to the dismissed

case, while "also making sure the jury understands the [victim's testimony regarding the dismissed case] and its proper context."

**Facts as Elicited at Trial**

{¶ 6} At the time of the subject July 2024 incident, appellant and the victim were married. The victim testified that they married in 2020 but their relationship was "on and off," and at the time of trial in 2025, they were divorced.

{¶ 7} The incident occurred on July 10, 2024. The day before, July 9, 2024, another case against appellant was dismissed; as mentioned, the victim was also the named victim in the dismissed case. The victim admitted to being upset about the dismissal and, although she initially denied it, admitted to having an "outburst" in the courtroom because of the dismissal. According to the victim, she just wanted appellant to leave her alone.

{¶ 8} That evening, the victim and her niece, who was in her late 20s, went to a bar. According to the victim, they arrived at the bar sometime between 11:00 p.m. and 12:00 a.m. The victim testified that she had at least one — but not more than two — drinks. The victim's niece testified that she believed they each had one drink. Both denied being intoxicated.

{¶ 9} Appellant came into the bar approximately 30 minutes after the victim and her niece had arrived. Upon seeing appellant, the victim and her niece gathered their belongings, left the bar, and walked toward their car; appellant followed them.

{¶ 10} Appellant reached the victim and her niece at their car before they could get into it. The victim testified that appellant "smacked" her in her face by

her right cheek.  Appellant then put his hands around her neck and said, "You thought I strangled you before.  I'm strangling you now."  The niece testified that she was screaming at appellant during the attack and attempted to intervene.

{¶ 11} The victim described feeling like she was "trying to grasp for air" while appellant was strangling her; she also testified that it "hurt" and she had trouble swallowing for three weeks afterward.  The assistant prosecuting attorney asked the victim if she recalled losing consciousness when appellant strangled her.  The victim responded, "No, I don't . . . .  I just know I passed out basically.  So probably, yeah."

{¶ 12} On redirect examination, the assistant prosecuting attorney questioned the victim about her testimony on direct examination that she "blacked out" when appellant strangled her.  As mentioned, the actual term that the victim used on direct examination was "passed out," but nonetheless she explained during her testimony on redirect examination that she understood losing consciousness and blacking out are two different things.  The victim defined "blacking out" as "just forgetting what happened at that moment right after."  The victim testified that blacking out is like passing out.  She defined losing consciousness as "you're not thinking no more after that."  The victim testified that "[a]fter being choked . . . I just literally fell to the ground afterwards, so . . . I just couldn't think no more."

{¶ 13} The victim's niece also testified that the victim fell to the ground.  According to the niece, the victim was trying to talk while appellant was strangling her but was unable.  After falling to the ground, the victim looked a "little bit dazed,"

and a "little bit out of it" and the niece had to help her get into the car. The niece and the victim went to the niece's house, where the niece tried to make the victim comfortable. They later went to the hospital at the niece's suggestion because the victim was complaining about her face.

{¶ 14} In contrast to the niece's testimony, the victim initially testified that her niece drove her to the hospital immediately after the assault. When confronted with her medical records, which indicated her arrival time, the victim admitted that she did not immediately seek treatment. Rather, the victim confirmed that she and her niece went to the niece's house for a few hours prior to going to the hospital. The victim explained that they first went to the niece's house because she had been drinking that night.

{¶ 15} At the hospital, the victim gave a narrative to the medical professionals. The narrative, which the victim was questioned about at trial and was admitted into evidence, reads:

> My niece and I were at the bar, my husband just had a strangulation and DV case dismissed yesterday and I guess was out celebrating his freedom. I saw him walk into the bar and told my niece it was time to go. We walked outside, he came running up and asked to talk. I tried to open the door of my car and he pushed me into the side of the car, choking me out, my niece is screaming at him; he smacked me and while he was strangling me, I lost consciousness and blacked out; afterwards I could hear him saying "now you can tell them that I really strangled you"; then I went to my niece's house to try to sleep it off, and this headache hasn't gone away since.

State's exhibit No. 11.

**{¶ 16}** The victim was photographed at the hospital. Several of the photographs were discussed with the victim during her testimony and admitted into evidence.

**{¶ 17}** The medical records indicate that the victim was anxious to leave the hospital and did so before the medical professionals were ready to release her. The victim testified that she has a daughter who, at the time of the trial, was 15 years old and she needed to get home to her. A relative took the daughter to the hospital, and the victim and daughter left the hospital together.

**{¶ 18}** The investigating detective, John Freehoffer ("Detective Freehoffer"), testified that the victim identified appellant as her attacker. In her statement to the detective, the victim said that she was unsure whether she lost consciousness because of alcohol or strangulation. At trial, the victim admitted her statement to Detective Freehoffer and testified that she was not certain why she mentioned both possibilities.

**{¶ 19}** Detective Freehoffer testified as to his experience with the Cleveland Division of Police's Domestic Violence Unit, of which he had been a member since 2001. According to the detective, each detective in the Domestic Violence Unit handles approximately 400 domestic-violence cases a year. Detective Freehoffer testified about the "numerous conferences on domestic violence and sexual assaults, strangulation . . . classes" he has attended.

**{¶ 20}** Specifically regarding strangulation, Detective Freehoffer said that he had attended national conferences and seminars on the crime. The assistant

prosecuting attorney questioned the detective on the difference between domestic violence and strangulation; the defense objected on the grounds that such testimony was expert testimony and the State did not supply it with an expert report from the detective.

{¶ 21} The State countered that it was not questioning Detective Freehoffer as an expert but, rather, based on his experience as a member of the Domestic Violence Unit and training on incidents of domestic violence and strangulation. The trial court overruled the defense's objection.

{¶ 22} Detective Freehoffer testified that, according to studies, victims of strangulation are more likely than victims of other domestically violent situations to become victims of homicide. The detective also testified about the medical risks associated with strangulation — specifically, tears in blood vessels or injuries caused because of the lack of oxygen to the brain. Detective Freehoffer further testified that strangulation victims do not always have visible injuries on their necks and that bruising can look different on people depending on their skin tones.

{¶ 23} At the close of the State's case, the State dismissed Count 6, assault, and the defense made a Crim.R. 29 motion for judgment of acquittal; the trial court denied the defense's motion. The defense presented one witness, Jason Dietz ("Dietz"), an investigator for the Cuyahoga County Public Defender's Office.

{¶ 24} Dietz was tasked with investigating the bar and surrounding area where the attack occurred, speaking with witnesses, and obtaining surveillance video. Dietz spoke with the bar owner's husband, who did not provide any

information relative to this incident. Dietz was unable to speak with any other witnesses who were at the bar and surrounding area at the time in question and was not able to obtain any video surveillance from the bar.

{¶ 25} Dietz was able to obtain surveillance video from a nearby Dollar General Store, however. According to Dietz, the video of the time in question shows that the bar's lights were turned off approximately seven to eight minutes before midnight. Dietz admitted that the timestamp on surveillance videos are sometimes inaccurate, however. Further, to Dietz's knowledge, the store's manager — who shared the video with him — did not calibrate the video to make sure the time was accurate. Sometime after Dietz obtained the video from Dollar General, the store closed and his attempts to have further contact with the manager were unsuccessful.

**Verdict and Sentence**

{¶ 26} The jury returned guilty verdicts on Count 4, third-degree felony strangulation, and Count 5, domestic violence. The jury returned not guilty verdicts on the remaining counts — Count 1, felonious assault; Count 2, second-degree felony strangulation; and Count 3, third-degree felony strangulation. The trial court sentenced appellant to two 30-month prison terms and ordered them to be served concurrently.

**Assignments of Error**

{¶ 27} Appellant raises the following three assignments of error for our review:

I. The trial court erred when a State's witness was allowed to offer irrelevant and inflammatory testimony over defense objection.

II. The trial court erred when it allowed the introduction of "prior acts" evidence over defense objection.

III. The verdict finding the appellant guilty of strangulation and domestic violence was against the manifest weight of the evidence.

**Law and Analysis**

**Trial Court Did Not Abuse Its Discretion by Allowing the Detective's Testimony**

{¶ 28} In his first assignment of error, appellant contends that the trial court erred by allowing Detective Freehoffer to testify about the seriousness and severity of strangulation cases. According to appellant, such testimony was expert testimony that could only be offered by a medical professional. Appellant also contends that Detective Freehoffer's testimony was irrelevant.

{¶ 29} As mentioned, the State presented Detective Freehoffer as a lay witness under Evid.R. 701. "Evid.R. 701 affords the trial court considerable discretion in controlling the opinion testimony of lay witnesses." *State v. Grajales*, 2018-Ohio-1124, ¶ 60 (5th Dist.), citing *State v. Harper*, 2008-Ohio-6926, ¶ 37 (5th Dist.), citing *Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 113 (1989). We therefore review a trial court's determination of the admissibility of lay witness opinion testimony for an abuse of discretion. *State v. Allen*, 2010-Ohio-9, ¶ 46 (8th Dist.). An abuse of discretion occurs when "a court [exercises] its judgment,

in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 30} Evid.R. 701 provides that "if the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 31} To satisfy the first prong of Evid.R. 701, the opinion of the lay witness must be "'one that a rational person would form on the basis of the observed facts.'" *State v. Mulkey*, 98 Ohio App.3d 773, 784 (10th Dist. 1994), quoting *Lee v. Baldwin*, 35 Ohio App.3d 47, 49 (1st Dist. 1987). Where a law enforcement officer "testified as a lay witness to opinions based on his [or her] experience as a police officer, his [or her] previous investigations, and his [or her] perception of evidence at issue," this first prong is satisfied. *State v. Walker-Curry*, 2019-Ohio-147, ¶ 12 (8th Dist.), citing *Grajales* at ¶ 64.

{¶ 32} The second prong of Evid.R. 701 requires that "the opinion . . . assist the trier of fact in understanding the testimony of the witness or determining a fact in issue." *State v. Sibert*, 98 Ohio App.3d 412, 426 (4th Dist. 1994), citing *Lee* at *id*. Under this prong, a police officer's opinion testimony may be admissible to explain a fact at issue even when it is based on specialized knowledge. *Walker-Curry* at ¶ 13; *State v. Maust*, 2016-Ohio-3171, ¶ 19 (8th Dist.).

{¶ 33} Detective Freehoffer was a veteran law enforcement official who, specifically, had over two decades of experience in the Cleveland police's domestic-violence unit. The detective had handled thousands of domestic-violence cases and attended training and educational seminars on the topic. Further, Detective Freehoffer had training and education specific to strangulation.

{¶ 34} The detective's testimony was based on his experience as a police officer and, specifically, his previous investigations in domestic-violence and strangulation cases, as well as his perception of the evidence at issue. The first prong of Evid.R. 701 was satisfied.

{¶ 35} Further, portions of Detective Freehoffer's testimony assisted the jury in determining a fact in issue. For example, the detective testified that strangulation does not always leave marks on victims and that bruising from strangulation can present differently on victims, depending on their skin tones. On this record, the detective's testimony also satisfied the second prong of Evid.R. 701.

{¶ 36} Regarding relevancy, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, Evid.R. 403(A) limits the admission of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As with lay opinion testimony, this court reviews the decision regarding relevancy under an abuse-of-

discretion standard. *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus.

{¶ 37} Regarding relevancy, we find the detective's testimony about certain aspects of strangulation was relevant. Specifically, his testimony that strangulation does not always leave marks on victims and that bruising from strangulation can present differently on victims, depending on their skin tones, was relevant. We are strained to find that Detective Freehoffer's testimony that strangulation can escalate to homicide was relevant in this case, however. Regardless, given the other evidence in this case, we find that allowing such testimony was harmless error.

{¶ 38} The first assignment of error is overruled.

**The Trial Court Did Not Abuse Its Discretion by Allowing Testimony About Another Act**

{¶ 39} For his second assigned error, appellant challenges the trial court's allowance of the victim's testimony about the dismissed case against appellant in which she was the named victim.

{¶ 40} As discussed, prior to the start of trial the State notified the trial court that it wanted to question the victim about the other case, which had been dismissed earlier the same day as the within incident. The assistant prosecuting attorney explained to the trial court her belief that the testimony was admissible as follows:

> The fact there was a case dismissed, it's effectively a motive for the strangulation that happens several hours after the dismissal of that case. It's the State's position that just would come into evidence during the testimony of [the victim] during trial. I don't believe it's

404(B) notice of any prior bad acts. It's just the fact there was a dismissal of the case. The alleged victim and Defendant were the same, and then this event happened several hours later. I have instructed [the victim] not to talk about the facts of the case or not to talk about anything relating to the case other than the fact that it existed and it was dismissed the day that this incident effectively occurred. I did speak with the defense. I just wanted to put this Court and the Defense on notice as well.

(Tr. 295-296.)

{¶ 41} Appellant contends that the trial court abused its discretion by allowing the victim to testify to "other acts" evidence under Evid.R. 404(B). The testimony at issue was the victim's testimony that a case against the appellant had been dismissed that day and that she, upset by the dismissal, went to the bar with her niece later that evening. Appellant went to the same bar, arriving not long after the victim and her niece had arrived. The victim and her niece tried to get away from appellant, but he pursued and eventually caught up to them. The appellant "smacked" and "choked" the victim and said, "You thought I strangled you before. I'm strangling you now."

{¶ 42} "Evidence that an accused committed a crime other than the one for which he [or she] is on trial is not admissible when its sole purpose it to show the accused's propensity or inclination to commit crime, or that he [or she] acted in conformity with bad character." *State v. Williams*, 2012-Ohio-5695, ¶ 15. However, Evid.R. 404(B)(2) identifies exceptions where other acts of wrongdoing are admissible for nonpropensity purposes. Specifically, the rule provides that evidence of any other crime, wrong, or act "may be admissible for another purpose,

such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2).

{¶ 43} In *Williams*, the Ohio Supreme Court provided a three-step analysis for courts to determine the admissibility of other-acts evidence: (1) was the evidence relevant, (2) was the evidence presented for a legitimate purpose under Evid.R. 404(B)(2), and (3) was the probative value of the evidence substantially outweighed by the danger of the unfair prejudice. *Id.* at ¶ 20.

> Whether the other-acts evidence is relevant under the first step of *Williams* is dependent upon whether the evidence is offered for a nonpropensity purpose as set forth in the second step of *Williams*, i.e., a legitimate purpose for which the evidence is offered, and whether the nonpropensity purpose goes to a material issue in the case.

*State v. Hale*, 2024-Ohio-1587, ¶ 65 (8th Dist.).

{¶ 44} Moreover, other acts evidence may also be admitted when those acts form part of the "immediate background of the alleged act," as part of the res gestae of the charged crime. *State v. David*, 2021-Ohio-4004, ¶ 16 (1st Dist.).[1] "There are occasions when the other-acts evidence is so inextricably intertwined with the charged conduct that its admission is necessary to give the complete picture of what occurred." *State v. Wilkinson*, 64 Ohio St.2d 308, 318 (1980).

{¶ 45} The victim's testimony about the case that was dismissed hours before this incident formed the immediate background of this case. The testimony

---

[1] Res gestae is defined by *Black's Law Dictionary* (11th Ed. 2019), as "the events at issue or other contemporaneous events that accompany, constitute, or explain a transaction. It historically refers to spontaneous statements or acts so closely connected to an event that they form part of the transaction, making them admissible as evidence."

explained the animosity between the victim and appellant, why the victim and her niece immediately left the bar upon seeing appellant enter the bar, and appellant's statement to the victim that if she thought he had strangled her before, he was going to show her a real strangulation.

{¶ 46} Moreover, the defense was able to use the testimony to impeach the victim. Specifically, on cross-examination, defense counsel questioned the victim about being unhappy about the dismissal of the case. The victim denied being unhappy about the dismissal stating, "I had told the Judge I had forgave him [appellant], so I wasn't unhappy." Defense counsel continued to question the victim as to whether the trial court judge who presided over the dismissed case characterized the victim's response to the dismissal as an "outburst" and the victim continued to deny her behavior. When defense counsel confronted the victim with the transcript from the dismissed case, she was finally forced to admit that the trial judge indeed characterized her reaction to the dismissal as an "outburst."

{¶ 47} On this record, the trial court did not abuse its discretion by allowing testimony about an incident that occurred in the hours before the within incident. The testimony was not used to show that appellant had a propensity to commit a crime or that he acted in conformity with bad character. Rather, the subject testimony provided context to the victim and appellant's interaction on the evening in question.

{¶ 48} The second assignment of error is overruled.

**The Convictions Were Not Against the Manifest Weight of the Evidence**

{¶ 49} In his third assignment of error, appellant contends that his strangulation and domestic-violence convictions are against the manifest weight of the evidence.

{¶ 50} When considering a manifest-weight-of-the-evidence challenge, this court reviews the entire record and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A manifest-weight challenge should be sustained "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at *id.*

{¶ 51} Appellant contends that the victim's and her niece's testimonies were inconsistent and, therefore, the jury lost its way in rendering its verdicts. We disagree.

{¶ 52} Admittedly, there were inconsistencies in the testimonies. Indeed, in the State's closing argument, the assistant prosecuting attorney acknowledged that at least the victim's testimony was inconsistent, telling the jury, "I'm not going to pretend that [the victim] got up there and was a great witness. She had inconsistencies with me and with Defense Counsel. She needed to be reminded of things. She needed to be corrected."

{¶ 53} However, "a defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness' testimony are inconsistent or contradictory." *State v. Flores-Santiago*, 2020-Ohio-1274, ¶ 40 (8th Dist.). Further, the trial court instructed the jury on its duty in assessing the credibility of the witnesses.

{¶ 54} We give due deference to the factfinder's credibility determinations.

> The fact-finder . . . occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.

*State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist. 1998).

{¶ 55} Although the victim had inconsistencies in her testimony, her niece corroborated her account of appellant's actions regarding the incident. Moreover, the jury had the victim's medical records and photographs of her taken at the hospital. This is not the exceptional case requiring reversal. The convictions were not against the manifest weight of the evidence. The third assignment of error is overruled.

{¶ 56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EMANUELLA D. GROVES, J., CONCUR