[Cite as *State v. Miller*, 2023-Ohio-1141.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                         No. 111785

    v.                                :

ROBERT MILLER,                          :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:**  April 6, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-652565-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Charles A. Koenig, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Robert Miller ("Miller"), appeals from his convictions and sentence following a bifurcated trial. He raises the following assignments of error for review:

1. Miller's convictions for child endangering were not supported by sufficient evidence in violation of his rights under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

2. Miller's conviction for gross sexual imposition was not supported by the manifest weight of the evidence in violation of his rights under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

3. Miller was deprived of his constitutional rights to an impartial jury, a fair trial and due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, as a consequence of the failure to sever the charges against him and allowing inadmissible prior acts evidence.

4. Miller was deprived of his constitutional rights to due process in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, as a consequence of ineffective assistance of counsel.

5. Miller's rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 9 and 16 of the Ohio Constitution were violated by the trial court imposing a sentence that was contrary to law and unsupported by the record and by imposing sentences disproportionate to those same or similarly situated as Miller.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for resentencing on the allied offense of similar import.

## I. Procedural and Factual History

{¶ 3} On December 28, 2020, Miller was named in a six-count indictment, charging him with rape in violation of R.C. 2907.02(A)(1)(b), with a sexually violent predator specification (Count 1); gross sexual imposition in violation of R.C.

2907.05(A)(4), with a sexually violent predator specification (Count 2); gross sexual imposition in violation of R.C. 2907.05(A)(4), with a sexually-violent-predator specification (Count 3); endangering children in violation of R.C. 2919.22(B)(3) (Count 4); endangering children in violation of R.C. 2919.22(B)(1), with a furthermore specification that "the violation resulted in serious physical harm" (Count 5); and rape in violation of R.C. 2907.02(A)(2) (Count 6). Counts 1, 2, and 3 of the indictment stemmed from allegations that Miller sexually assaulted his eldest daughter, R.M., born January 13, 1991. Counts 4 and 5 stemmed from allegations that Miller physically assaulted his youngest daughter, H.M., born June, 8, 1998. Finally, Count 6 stemmed from allegations that Miller sexually assaulted his sister-in-law, H.D.

{¶ 4} The matter proceeded to a bifurcated trial on June 1, 2022. Upon the agreement of the parties, the underlying offenses were tried to a jury and the sexually violent predator specifications were tried to the bench. Relevant to this appeal, the following facts were adduced at trial.

{¶ 5} Miller and his wife, Mary Miller ("Mary"), were married on June 3, 1989. They have four children together: R.M., H.M., Ra.M., and J.M. At trial, the state elicited substantial testimony regarding Miller's home life, including allegations that he perpetrated physical and sexual abuse against members of his family through fear, isolation, and manipulation.

{¶ 6} Miller's eldest daughter, R.M. testified that Miller was "extremely violent" and had "extreme anger control issues." (Tr. 129-130.) She explained that

Miller was very strict and believed discipline was necessary to correct his children's misbehavior. Rather than grounding his children, Miller would "line [them] up and beat [them] until someone admitted to whatever it was he thought [they] did." (Tr. 122.) R.M. testified that Miller used various objects to facilitate his discipline, including wooden paddles, leather straps, hangers, and cords. R.M. opined that Miller's "spare the rod, spoil the child" philosophy of parenting was premised on "[his] interpretation of the Bible and what he thought was the correct way to do things." (Tr. 122.)

{¶ 7} R.M. testified that Miller also engaged in a pattern of sexual abuse that began when she was a child. R.M. was frequently isolated from her siblings and forced to sleep in Miller's bed at night when Mary was travelling for work. When R.M. was in elementary school, she awoke in the middle of the night to the feeling of Miller's bare hand touching her vagina. (Tr. 138.) R.M. testified that she understood Miller's conduct was "really bad and wrong," so she would "pretend like [she] was sleeping until it was over." (Tr. 139.) R.M. stated that she never spoke to Miller about the inappropriate touching because she was "very confused" and "really scared." (Tr. 138.) R.M. estimated that Miller touched her vagina on more than ten separate occasions. (Tr. 139.)

{¶ 8} In addition to the foregoing incidents, R.M. testified that one night she awoke to Miller performing cunnilingus on her. Thereafter, Miller took R.M.'s hand and placed it on his erect penis. (Tr. 139.) The following morning, Miller "made a facial gesture where he was sticking his tongue out and licking the air." (Tr. 144.)

R.M. estimated that she was a seventh- or eighth-grade middle schooler when this incident took place.

{¶ 9} R.M. did not understand the significance of her father's conduct until she was much older. She first disclosed the sexual abuse to her mother when she was 17 years old. However, R.M. pleaded with Mary to not tell anyone about the abuse because R.M. "was really scared he would hurt [her] if it got out." (Tr. 147.) R.M. testified that Mary "didn't even seem to, like, react" to the disclosure. In the years that followed, R.M. told several other individuals about her sexual abuse, including her youngest sister, H.M., her childhood friend, her boyfriend, and her youth pastor. The rest of R.M.'s family learned of Miller's conduct during a family meeting held in 2015. Ultimately, however, R.M. did not report Miller's conduct to the police until November 2019.

{¶ 10} H.M. corroborated much of R.M.'s testimony regarding their father's anger and disciplinary practices, stating that his "beatings" and "verbal abuse" were premised on his strict religious practices. (Tr. 213.) When H.M. was 17-years old, Miller learned that she had lied about her whereabouts and had visited a boy without permission. When H.M. arrived home later that day, Miller "took her inside and pulled out an extension cord and beat [H.M.] again and again until [her] legs were so bruised and swollen that * * * for the rest of the month [she] couldn't wear shorts no matter how hot it was." (Tr. 214.) H.M. explained that the extension cord was approximately 6 to 12 feet long and that Miller "wrapped it up" and struck her repeatedly on her lower back, legs, and middle back. (Tr. 214.) H.M. testified that

the incident "was painful" and "seemed like it went on forever." (Tr. 214.) When asked if she observed any additional injuries as a result of the incident, H.M. responded, "No. I guess just the embarrassment [of] thinking in was my fault having to cover the bruises no matter how hot the day was." (Tr. 215.)

{¶ 11} H.M. photographed her injuries and showed them to her older sister, R.M. Although H.M. was unable to recover the images for the purposes of trial, she expressed that the "picture of [her] legs all black and blue * * * was enough to have [R.M.] reach out to her and ask if [she] wanted to take legal action." (Tr. 215.) R.M. corroborated much of H.M.'s testimony, stating "[H.M.] was extremely upset" and shared "pictures of the bruises all the way down * * * her butt, her legs." (Tr. 151.)

{¶ 12} H.M. did not disclose the incident of abuse to the police until 2019. H.M. was reluctant to file a police report against Miller because she "wanted to move on with [her] life." (Tr. 218.) Years later, however, H.M. decided to cooperate with the investigation against Miller because "[he] proved he is still a threat to society." (Tr. 218-219.)

{¶ 13} Miller's middle daughter, Ra.M., reiterated much of the testimony of her sisters, R.M. and H.M. She confirmed that Miller often forced her oldest sister, R.M., to sleep in his bed without any of the other children. She further testified that Miller was quick to anger and very strict. Ra.M. summarized Miller's manner of discipline as follows:

> So discipline was whenever anything happened, usually it was, like, immediate, in the moment. Like, everybody would be laughing and having a good time and something would happen and all of a sudden

the face of my dad would change and it would turn into him hitting us and screaming. Or if, like, he found something that was — he wanted to know who did it, he would line us up and pick up the nearest object, whether there was a board, a stick, a hanger, whatever it was that was the closest object and start hitting us with it until someone fessed up to doing it. So we would take turns with punishment, but either it was, like, a smack in the face, a backhand or hitting just, like, with an object.

(Tr. 273-274.)

{¶ 14} Miller's sister-in-law, H.D., testified that she lived with Miller and Mary in 1989 and served as a live-in nanny for several years. At some point in 1996, Miller contacted H.D. at her place of employment and asked her to accompany him to lunch. H.D. agreed, stating "usually you do everything [Miller] tells you to do." (Tr. 70.) When Miller picked H.D. up from work, he drove to his home and asked H.D. to come inside while he retrieved an item he had forgotten. H.D. testified that once she entered the home, Miller immediately "pinned her to the floor and started to take [her] clothes off." (Tr. 72.) Miller then forced H.D. to engage in vaginal intercourse. She explained the encounter as follows:

He started to tear my clothes off. He forced himself to have sex with me. He ripped my clothes off and I kept pushing him as hard as I could push him off of me, told him to stop and leave me alone, to get off of me. And he just blank – blank face. He kept going.

(Tr. 72.) Forensic testing performed in October 2021, confirmed that Miller is the biological father of H.D.'s eldest daughter, S.W., born July 10, 1997. H.D. maintained that S.W. was conceived during the sexual assault in 1996.

{¶ 15} Years later, H.D. became troubled by the nature of Miller's relationship with his daughter, R.M. H.D. was so concerned that she confronted

R.M., who was 14 or 15 years old at the time, and asked whether Miller had ever touched her inappropriately. R.M. "completely denied" being touched inappropriately by her father. However, H.D. believed R.M. was "lying." (Tr. 81.) At trial, R.M. confirmed that she did not tell H.D. about Miller's conduct when she had the opportunity to do so. R.M. maintained that she denied H.D.'s accusation because she was young, "extremely scared," and believed Miller was capable of harming H.D. (Tr. 149.)

{¶ 16} Detective Richard Durst ("Det. Durst") of the Cleveland Police Department was assigned to investigate the allegations levied against Miller. In the course of his investigation, Det. Durst interviewed R.M., H.M., Ra.M., and H.D. Det. Durst then executed a search warrant at Miller's home and generated a written report. Det. Durst also spoke with H.D.'s daughter, S.W., and obtained a DNA sample that confirmed that Miller was her biological father.

{¶ 17} At the conclusion of the state's case, defense counsel moved for a dismissal of all counts pursuant to Crim.R. 29, which the trial court denied.

{¶ 18} Miller's nieces, Kayla Kowalski ("Kayla") and Kimberly Kowalski ("Kimberly"), testified on behalf of Miller. Each described their fondness for Miller and the important role he played in their childhood. Kayla and Kimberly spent significant time in Miller's home and often observed him administer discipline to his children. They stated that Miller used a wooden paddle to whip the children, but "the rule was three swats, three whooping not hard enough to leave a mark[.]" (Tr. 350.) Kayla, in particular, was very close with R.M. during their "preteen and

teenage years." (Tr. 315.). Kayla testified that she and R.M. were "together every single day" and told each other everything. (Tr. 311.) When asked whether R.M. ever disclosed that she was sexually abused by her father when she and R.M. were 12 to 16 years old, Kayla responded "absolutely not." (Tr. 317.) Kimberly similarly testified that R.M. never disclosed to her that she was sexually abused by her father. (Tr. 354.)

{¶ 19} Mary also testified on behalf of the defense. Mary did not dispute the nature of Miller's discipline practices or his use of objects to "administer spankings." (Tr. 420.) However, Mary denied ever seeing Miller spank his child with a cord. Mary testified that she had private conversations with Miller when his discipline crossed the line, but that it was her duty to "submit and respect [her] husband." (Tr. 421.) Regarding the incident when H.M. was 17-years old, Mary testified that Miller "started whipping her for not telling the truth about where she was or who she was with." (Tr. 431.) Mary stated that H.M. sustained bruises on her legs and had a difficult time wearing pants as a result of her injuries.

{¶ 20} Mary was aware of R.M.'s allegations of sexual abuse against Miller well before a police report was filed in 2019. Mary explained that R.M. first disclosed Miller's inappropriate behavior when she was 16 years old. However, Mary did not report the alleged conduct because R.M. "begged and pleaded with [her] over and over again to * * * not say anything." (Tr. 434.) Ultimately, Mary did not contact the authorities or otherwise disclose the allegations to anyone else out of fear of "embarrassing [R.M.] and, you know, the family[.]" (Tr. 434.)

{¶ 21} Miller testified on his own behalf. Throughout his direct examination, Miller described his perspectives on parenting, including his duty as "the head of the household" to "correct" his children's behavior when necessary. (Tr. 455-456.) Miller conceded that he was strict with his children and would "spank or whoop" them with a paddle, his hand, or a belt. Miller further confirmed that there were specific occasions where he has "gotten out of hand in spanking [his] children." (Tr. 461.) For instance, Miller testified that when H.M. was 17-years old, he believed that H.M. had been lying about her whereabouts one day, so he "whipped her" with a leather belt until she admitted that she had been with a boy from work. Miller did not dispute that he was angry and went "overboard." (Tr. 422.) However, he denied using an extension cord, and further minimized the degree of harm caused to H.M., stating that she was able to go into work later that same day.

{¶ 22} With respect to the allegations of sexual abuse, Miller "unequivocally" denied touching R.M. inappropriately. (Tr. 474.) He testified that he did allow his children to sleep in his bed occasionally, but that he never touched R.M.'s vagina, never performed oral sex on R.M., and never required R.M. to touch his penis. Finally, Miller conceded that he had sexual intercourse with H.D. in 1996. However, he maintained that it was a consensual encounter.

{¶ 23} At the conclusion of trial, Miller was found guilty of gross sexual imposition, a felony of the third degree, as charged in Count 2 of the indictment; child endangering, a felony of the third degree, as charged in Counts 4 of the indictment; and child endangering, a felony of the second degree, as charged in

Count 5 of the indictment. Miller was found not guilty of rape and gross sexual imposition as charged in Counts 1, 3, and 6 of the indictment. Thereafter, the trial court found Miller not guilty of the sexually violent predator specification attached to Count 2 of the indictment.

{¶ 24} At sentencing, the trial court imposed a five-year term of imprisonment on Count 2. The trial court found the child endangering offenses were allied offenses of similar import that merged for the purposes of sentencing. The state elected to proceed with sentencing on the second-degree felony offense charged in Count 5. The trial court, however, imposed an eight-year term of imprisonment on the third-degree felony offense charged in Count 4. The prison terms imposed on Counts 2 and 4 were ordered to run consecutively to each other, for an aggregate 13-year prison term.

{¶ 25} Miller now appeals from his convictions and sentence.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 26} In the first assignment of error, Miller argues his convictions for child endangering are not supported by sufficient evidence.

{¶ 27} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 28} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Further, circumstantial evidence is not only sufficient, "'"but may also be more certain, satisfying, and persuasive than direct evidence."'" *Id.* at ¶ 36, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 29} In this case, Miller was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4) (Count 2), endangering children in violation of R.C. 2919.22(B)(3) (Count 4), and endangering children in violation of R.C. 2919.22(B)(1) (Count 5). Miller does not challenge the sufficiency of the evidence supporting his conviction for gross sexual imposition. Our review, therefore, is limited to the sufficiency of the evidence supporting the child-endangering offenses.

{¶ 30} Ordinarily, "[w]hen a court merges one offense into another, an appellate court has no obligation to consider whether the merged count is supported by the sufficiency of the evidence." *State v. Johnson*, 8th Dist. Cuyahoga No. 106141, 2018-Ohio-4023, ¶ 16, fn. 1, citing *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23. In this case, the trial court found Counts 4 and 5 merged for the purposes of sentencing and the state elected to proceed with sentencing on Count 5. (Tr. 609.) However, as discussed in further detail below, the trial court did not impose a sentence on Count 5 as requested. Rather, the court sentenced Miller on the child-endangering offense charged in Count 4 of the indictment. Under these limited circumstances, we deem it necessary to review the evidence supporting each child-endangering conviction.

### 1. Count 4 — R.C. 2919.22(B)(3)

{¶ 31} Parents have the right to use reasonable physical discipline, or corporal punishment, to prevent and punish a child's misconduct. *State v. Ford*, 8th Dist. Cuyahoga No. 109087, 2020-Ohio-4298, ¶ 21, citing *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991); *State v. Hicks*, 88 Ohio App.3d 515, 518, 624 N.E.2d 332 (10th Dist.1993). "'The right of parents to administer reasonable corporal punishment is deeply rooted in the history and traditions of this nation.'" *State v. Hoover*, 5 Ohio App.3d 207, 211, 450 N.E.2d 710 (6th Dist.1982), quoting *Quinn v. Nolan*, 7 Dec.Rep. 585, 586 (1879). However, such punishment must be reasonable and not exceed the bounds of moderation and inflict cruel

punishment. *See State v. Liggett*, 84 Ohio App. 225, 83 N.E.2d 663 (12th Dist.1948).

{¶ 32} Pursuant to R.C. 2919.22(B)(3):

> No person shall do any of the following to a child under eighteen years of age * * * [a]dminister corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child[.]

{¶ 33} The culpable mental state for endangering children is recklessness. *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980); *State v. Greenlee*, 2d Dist. Montgomery No. 24660, 2012-Ohio-1432, ¶ 11. A person acts reckless when

> with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶ 34} R.C. 2919.22(B)(3) does not require the state to prove that the child suffered serious physical harm. Instead, the statute requires the state to prove that the conduct at issue created "a substantial risk of serious physical harm to the child." Thus, to obtain a conviction on Count 4, the state was not required to prove that Miller's conduct in fact caused the child to suffer serious physical harm, but only to show that Miller's conduct created a substantial risk of serious physical harm. *In re Kristen V.*, 6th Dist. Ottawa No. OT-07-031, 2008-Ohio-2994, ¶ 69 (stating that "R.C. 2919.22(B)(3) requires only that the corporal punishment create a substantial

risk, or strong possibility," of serious physical harm); *State v. Sarver*, 7th Dist. Columbiana No. 5-CO-53, 2007-Ohio-601, ¶ 49; *State v. Harris*, 8th Dist. Cuyahoga No. 78241, 2001 Ohio App. LEXIS 2562 (June 7, 2001) (stating that "the jury's finding that [defendant] committed the offense of endangering children is not inconsistent with its further finding that [defendant] did not cause serious physical harm to [the child].").

{¶ 35} A "substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). In turn, "serious physical harm to persons" is defined to include any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶ 36} The reasonableness of corporal punishment in each case must be evaluated in light of all the relevant facts and circumstances, including "the child's age, the child's behavior that led to the parent's action, the child's response to

noncorporal punishment, and the location and severity of the punishment," as well as "the parent's state of mind while administering the discipline." *Ford*, 8th Dist. Cuyahoga No. 109087, 2020-Ohio-4298, at ¶ 28.

{¶ 37} Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of R.C. 2919.22(B)(3) proven beyond a reasonable doubt. In this case, H.M. testified that when she was 17-years old, Miller struck her repeatedly with an extension cord after he learned that she had lied about spending time with a boy. H.M. testified that her father's method of discipline "seemed like it went on forever" and caused extensive bruising on her lower body. H.M. testified that her legs "were so bruised and swollen" that she could not wear shorts for a month and had trouble sitting. R.M. corroborated the extent of H.M.'s injuries, stating that H.M. had "very dark bruises all the way down * * * her butt, her legs." (Tr. 151.) Miller himself admitted that he went "overboard" by "whipping" H.M. until she "broke down" and told him the truth. (Tr. 470.) Miller further confirmed that he left markings on H.M. and was not proud of his conduct. (Tr. 471, 487.)

{¶ 38} Under the foregoing circumstances, we find the jury could have reasonably concluded that Miller's discipline of H.M. was violent, unreasonable, and excessive, in that Miller created a substantial risk of serious physical harm to H.M. by disregarding the unjustifiable risk associated with striking a teenage girl repeatedly with an extension cord. *See State v. Jackson*, 8th Dist. Cuyahoga No. 82724, 2004-Ohio-2332; *State v. Burdine-Justice*, 125 Ohio App.3d 707, 715, 709

N.E.2d 551 (12th Dist.1998); *State v. Sommerfeld*, 8th Dist. Cuyahoga No. 84154, 2004-Ohio-6101, ¶ 34 (The "correction of the victim's behavior under the circumstances presented did not require the severity of the beatings inflicted upon her by appellant."). Accordingly, we find the evidence was sufficient to convict Miller of child endangering in violation of R.C. 2919.22(B)(3).

## 2. Count 5 — R.C. 2919.22(B)(1)

{¶ 39} Pursuant to R.C. 2919.22(B)(1), "[n]o person shall do any of the following to a child under eighteen years of age * * * abuse the child." Thus, to support a conviction under R.C. 2919.22(B)(1), "'the state must prove, beyond a reasonable doubt: (1) that the child is under eighteen years of age * * *, (2) an affirmative act of abuse, and (3) which was reckless, that is perpetrated with heedless indifference to the consequences of the action.'" *State v. Hickman*, 8th Dist. Cuyahoga No. 99442, 2013-Ohio-4192, ¶ 17, quoting *Newburgh Hts. v. Cole*, 166 Ohio App.3d 826, 2006-Ohio-2463, 853 N.E.2d 689, ¶ 8 (8th Dist.). The offense is a second-degree felony when the conduct "results in serious physical harm to the child." R.C. 2919.22(E)(2)(d).

{¶ 40} The word "abuse" is not defined by the criminal statutes. *State v. Litton*, 12th Dist. Preble No. CA2016-04-005, 2016-Ohio-7913, ¶ 22, citing *State v. Hickman*, 8th Dist. Cuyahoga No. 99442, 2013-Ohio-4192, ¶ 19. However, as relevant here, the term "child abuse" has been defined as "'an act which inflicts serious physical harm or creates a substantial risk of serious harm to the physical health or safety of the child.'" *State v. Snyder*, 8th Dist. Cuyahoga No. 94755, 2011-

Ohio-1062, ¶ 17, quoting *State v. Ivey*, 98 Ohio App.3d 249, 257, 648 N.E.2d 519 (8th Dist.1994). "In making the determination of abuse, the trial court must look at the circumstances giving rise to the harm to the child, the disciplinary measures employed by the parent, the child's past history, and any other potential relevant factors." *Ivey* at 258. "Discipline that is excessive under the circumstances will be deemed to be reckless abuse." *Cleveland v. Calhoun*, 8th Dist. Cuyahoga No. 105521, 2018-Ohio-1758, ¶ 15, citing *Cleveland v. Callahan*, 8th Dist. Cuyahoga No. 87497, 2006-Ohio-5565, ¶ 29.

{¶ 41} In this case, there is no dispute that H.M. was under 18 years of age at the time of the incident. Moreover, we reiterate that H.M.'s testimony, if believed, permitted the jury to reasonably conclude that Miller abused his 17-year-old daughter by engaging in a method of discipline that was excessive under the circumstances and recklessly created, at the very least, a substantial risk of serious harm to the physical health or safety of H.M. Thus, the evidence was sufficient to satisfy the elements of R.C. 2919.22(B)(1).

{¶ 42} Regarding the furthermore clause, however, Miller argues that "the results of the whipping he administered did not cause 'serious physical harm' to H.M." Miller states that there is no evidence that H.M. sustained (1) some permanent or temporary incapacity; (2) some permanent disfigurement or temporary, serious disfigurement; or (3) acute pain of such duration as to result in substantial suffering or prolonged or intractable pain.

{¶ 43} When an element of a statute raises the degree of an offense, that element becomes an essential element of the offense. *See State v. Allen*, 29 Ohio St.3d 53, 54, 506 N.E.2d 199 (1987). The Ohio Supreme Court in *Allen*, addressing the effect of a prior OVI conviction, concluded that "the fact of a prior conviction did not simply enhance the penalty. It transformed the crime itself by increasing its degree. In such a case, the prior conviction is an essential element of the crime and must be proved by the state." *Id.*

{¶ 44} In this case, the furthermore clause attached to Count 5 elevated the degree of the offense from a misdemeanor of the first degree to a felony of the second degree. R.C. 2919.22(E)(2)(a) and (d). Thus, the furthermore clause was an essential element of the crime that required the state to prove beyond a reasonable doubt that Miller's violation of R.C. 2919.22(B)(1) "result[ed] in serious physical harm to the child involved." R.C. 2919.22(E)(2)(d).

{¶ 45} As previously discussed, to demonstrate serious physical harm, the state must establish one of the factors in R.C. 2901.01(A)(5)(a)-(e), such as permanent incapacity, temporary substantial incapacity, permanent disfigurement, temporary, serious disfigurement, acute pain of such duration as to result in substantial suffering, or any harm that results in prolonged pain.

{¶ 46} Relevant to this appeal, Ohio courts have found the following evidence sufficient to constitute temporary, substantial incapacity under R.C. 2901.01(A)(5)(c): the loss of consciousness; the inability to work; diminished vision; the need for two knee surgeries, a knee immobilizer, and physical therapy; and a

five-day hospital stay. *See, e.g., State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 23; *State v. Garner*, 2d Dist. Darke No. 2019-CA-10, 2020-Ohio-4234, ¶ 19; *State v. Browning*, 190 Ohio App.3d 400, 2010-Ohio-5417, 942 N.E.2d 394, ¶ 38 (4th Dist.); *State v. Bigsby*, 7th Dist. Mahoning No. 12 MA 74, 2013-Ohio-5641, ¶ 32; *State v. Winston*, 71 Ohio App.3d 154, 160, 593 N.E.2d 308 (2d Dist.1991).

{¶ 47} Regarding R.C. 2901.01(A)(5)(d), courts have recognized that "[u]nder certain circumstances, bruising can constitute serious physical harm because a bruise may satisfy the statutory requirement for temporary serious disfigurement." *State v. Crossty*, 1st Dist. Hamilton No. C-170085, 2017-Ohio-8382, ¶ 23, citing *State v. Jarrell*, 4th Dist. Scioto No. 08CA3250, 2009-Ohio-3753, ¶ 14, citing *State v. Worrell*, 10th Dist. Franklin No. 04AP-410, 2005-Ohio-1521, ¶ 47-51, *rev'd on other grounds*, *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174 (extensive bruising on the victim's lower back and hip for which she sought medical treatment); *State v. Krull*, 154 Ohio App.3d 219, 2003-Ohio-4611, 796 N.E.2d 979, ¶ 21 (12th Dist.) (extensive bruising on the victim's buttocks and legs, and a bloody cut); *but see State v. Massey*, 128 Ohio App.3d 438, 442, 715 N.E.2d 235 (1st Dist.) (a slight bruise on the victim's head was "inarguably minor"). The relevant inquiry is "whether the bruising is severe enough to qualify as serious disfigurement." *Jarrell* at ¶ 14.

{¶ 48} Finally, regarding the type of pain contemplated by R.C. 2901.01(A)(5)(e), this court has looked to the Committee Comment of the statute for

clarity. *See In re D.C.*, 8th Dist. Cuyahoga No. 111418, 2022-Ohio-4086, ¶ 35. The Committee Comment to this definition describes the level of pain as "pain which is unbearable or nearly so, though short lived, and pain which is long lasting or difficult to relieve, though not as keen." *State v. Sharp*, 8th Dist. Cuyahoga No. 87709, 2006-Ohio-6413, ¶ 25. "Hence, the definition of 'serious physical harm' can be said to encompass either intense pain of short duration or prolonged, dull pain." *State v. White*, 8th Dist. Cuyahoga No. 92972, 2010-Ohio-2342, ¶ 10.

{¶ 49} In challenging the evidence supporting the finding of serious physical harm in this case, Miller relies on this court's decisions in *State v. Ivey*, 98 Ohio App.3d 249, 257, 648 N.E.2d 519 (8th Dist.1994), *State v. Snyder*, 8th Dist. Cuyahoga No. 94755, 2011-Ohio-1062, and *State v. Crenshaw*, 8th Dist. Cuyahoga No. 108830, 2020-Ohio-4922.

{¶ 50} In *Ivey*, a father whipped his ten-year-old son with a belt for not telling him about a detention at school and the child suffered bruises and welts on his buttocks and legs. The father was convicted of multiple counts of endangering children. This court reversed, concluding that the state failed to prove by sufficient evidence that the parent's whipping resulted in serious physical harm or created a substantial risk of serious physical harm to the child.

{¶ 51} In *Snyder*, this court found that significant bruising on a two-year-old's body was not sufficient evidence of serious physical harm. The toddler was disciplined for a potty-training accident; her father hit her on the rear multiple times, enough to cause "excessive bruising." *Id*. at ¶ 19. The toddler was taken to

the hospital but released without any treatment. While this court referred to the father's actions in this case as "excessive punishment," it was determined that serious physical harm did not result from the incident. *Id*. at ¶ 20.

{¶ 52} In *Crenshaw*, the defendant was charged and convicted of endangering children in violation of R.C. 2919.22(B)(1), following an incident where the defendant disciplined her nine-year-old daughter, D.T., for using the defendant's hair dye without permission and making a mess with slime. The defendant "became enraged" and hit D.T. in the head with a kitchen spoon, pushed her head into a wall, and struck her legs with an extension cord three times. *Id*. at ¶ 2. D.T. sustained multiple bruises on her upper right arm and both legs. D.T. also had a bruise and a five-centimeter bump on her forehead. D.T. complained of pain the following day at school and was unable to sleep because of the pain.

{¶ 53} While recognizing that the defendant "clearly lost control and struck D.T. out of anger," this court vacated the defendant's endangering children conviction, finding the state did not present sufficient evidence to prove that D.T. suffered serious physical harm. *Id*. at ¶ 42. This court explained, in pertinent part:

> Here, a child suffered bruising and a bump on her head. We do not seek to minimize the pain that D.T. suffered, but the fact remains that her injuries only amounted to bruising and a bump. She did complain of not being able to sleep as a result of the pain the night after the incident. However, a few days later, she only described the pain as a two out of ten. The doctor only administered Tylenol, an over-the-counter pain medication. She did not require any follow-up care. D.T.'s father did not even give her any Tylenol in the days after the hospital visit. While this is certainly evidence of physical harm, the state did not present sufficient evidence of serious physical harm such that we can uphold a conviction under R.C. 2919.22(B)(1).

*Id.* at ¶ 50.

{¶ 54} In contrast, the state argues that this case is more analogous to the decisions reached by this court in *State v. Wright*, 8th Dist. Cuyahoga No. 92594, 2010-Ohio-243; *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999; *State v. Sandridge*, 8th Dist. Cuyahoga No. 87321, 2006-Ohio-5243; *State v. Plemmons-Greene*, 8th Dist. Cuyahoga No. 92267, 2010-Ohio-655; *State v. Simmons*, 8th Dist. Cuyahoga No. 96208, 2011-Ohio-6074; and *State v. Barbee*, 8th Dist. Cuyahoga No. 82868, 2004-Ohio-3126.

{¶ 55} In *Wright*, the defendant whipped his girlfriend's eight-year-old daughter, V.W., with an extension cord as punishment for her misbehavior at school. The child had bruising and numerous welts on her legs, arms, back, and chest. V.W. reported being in pain the day after the incident and had visible scars at the time of trial. Viewing this evidence in a light most favorable to the state, this court affirmed the defendant's child-endangering convictions, finding the evidence was "sufficient to establish that the offense resulted in serious physical harm." *Id.* at ¶ 46.

{¶ 56} In *Kurtz*, the victim was attacked at her place of employment by the defendant. The victim testified that the defendant "punched her 'really hard in the vagina,' 'tried to bite her nipples off,' and 'took his belt off and whipped [her] butt with it.'" *Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, at ¶ 6. The victim's injuries were photographed and extensively documented by medical personnel. The pictures entered into evidence at trial showed extensive welts across the majority of

the victim's buttocks and back, bite marks on her chest and buttock, redness across her chest, and bruising. Based on this evidence, this court affirmed the defendant's felonious assault conviction, finding "the victim's injuries amounted to a substantial, temporary disfigurement and, therefore, met the element of serious physical harm." *Id.* at ¶ 21.

{¶ 57} In *Sandridge*, the defendant physically assaulted his then girlfriend by grabbing her, choking her, and sticking his fingers down her throat. As a result of the incident, the victim "suffered a laceration to her lip," "her neck was swollen and bruised," "she had a sore throat," and "she was unable to eat solid foods for three weeks." *Id.*, 8th Dist. Cuyahoga No. 87321, 2006-Ohio-5243, at ¶ 17. The victim was transported to a hospital and received medical treatment for her injuries. After careful consideration, this court affirmed the defendant's felonious-assault conviction, finding "there was sufficient evidence which demonstrated that [the victim] suffered serious physical harm." *Id.* We explained that the victim's injuries "clearly fell within the definition contained in R.C. 2901.01(A)(5)(c) and (e) as [the victim] suffered some temporary, substantial incapacity and prolonged pain as a result of the defendant's assault." *Id.*

{¶ 58} In *Plemmons-Greene*, the defendant physically attacked her granddaughter. The victim testified that the defendant pushed her on the bed, punched her, kneed her, choked her with her necklace, and punched her in the eye. As a result of the defendant's attack, the victim suffered a black eye, the entire right side of her face was swollen and bruised, her neck was scratched and sore, and she

had bruises all over her thighs and buttocks. The victim also sustained a potentially permanent injury to her right eye and was prescribed medication for her pain. This court affirmed the defendant's domestic-abuse convictions, finding that the defendant recklessly caused the victim serious physical harm. *Id.*, 8th Dist. Cuyahoga No. 92267, 2010-Ohio-655, at ¶ 29.

{¶ 59} In *Simmons*, the defendant physically assaulted his girlfriend. The defendant struck the victim in the face, knocked her down, then dragged her into their apartment where he beat and choked her until she became unconscious. As a result of the altercation, the victim suffered "severe swelling and bruising in and around [her] left eye." *Id.* at 8th Dist. Cuyahoga No. 96208, 2011-Ohio-6074, at ¶ 38. The treating nurse further "observed petechia on the victim's face and neck that were indicative of strangulation." *Id.* at ¶ 27. This court affirmed the defendant's felonious conviction, finding there was sufficient evidence supporting the trier of fact's determination that he knowingly caused the victim serious physical harm. This court reasoned that the defendant's conduct amounted to a substantial risk of death, and caused the victim a temporary, serious disfigurement.

{¶ 60} Finally, in *Barbee*, the victim was robbed and struck in the head by the defendant's accomplice. The victim went to the hospital the next day because of pain and tenderness in the area where she had been hit. She sustained a bruise on the back of her neck that was "approximately three to four inches in length and approximately, maybe two inches in width ***." *Barbee*, 8th Dist. Cuyahoga No. 82868, 2004-Ohio- 3126, at ¶ 60. The bruise was visible approximately four days

after the assault. This court affirmed the defendant's aggravated robbery conviction, finding "the state proved [the victim] suffered serious physical harm." *Id.*

{¶ 61} The foregoing discussion illustrates that although the term "serious physical harm" is defined by statute, "[t]he degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.'" *State v. Irwin*, 7th Dist. Mahoning No. 06MA20, 2007-Ohio-4996, ¶ 37, quoting R.C. 2901.01(A)(5). The element of serious physical harm is fact dependent that must be reviewed on a case-by-case basis and under the totality of the circumstances presented therein.

{¶ 62} After careful consideration, we find this case is more analogous to the factual circumstances discussed in *Ivey*, *Snyder*, and *Crenshaw*. In this case, H.M. described the nature of her injuries, the location of her bruising, and the pain she endured after the incident. H.M. testified that it hurt to sit down and that she was too embarrassed to wear shorts for approximately one month after the incident. Pain associated with bruising is common. In this case, however, H.M.'s brief reference to her pain did not amount to evidence that Miller caused her "intense pain of short duration or prolonged, dull pain." H.M. confirmed that her injuries were limited to black and blue markings and that she did not require emergency medical attention or counseling after the altercation. Additionally, there is no evidence that H.M. was substantially restricted by her injuries or associated pain. To the contrary, H.M. was able to work shortly after being disciplined without

incident. Consistent with the circumstances presented in *Ivey*, *Snyder*, and *Crenshaw*, H.M.'s injuries, while troubling, did not result in temporary substantial incapacity, temporary serious disfigurement, or intense pain. Thus, we are unpersuaded by the cases relied on by the state, which involved substantial and lasting physical injuries that are well beyond the bruising described in this case.

{¶ 63} We do not intend to diminish the significance of Miller's conduct, or the consequences associated with his reckless behavior. As discussed, Miller's discipline of H.M. was reckless, excessive, and subjected H.M. to a substantial risk of serious physical harm. He was rightfully charged and convicted for this conduct. Nevertheless, under the specific facts of this case, we are compelled to follow the precedent of this court and find H.M.'s " bruising" did not constitute serious physical harm. In many aspects, the nature of the incident and the degree of the harm caused were not as significant as those presented in *Ivey*, 98 Ohio App.3d 249, 257, 648 N.E.2d 519 (8th Dist.1994), *Snyder*, 8th Dist. Cuyahoga No. 94755, 2011-Ohio-1062, or *Crenshaw*, 8th Dist. Cuyahoga No. 108830, 2020-Ohio-4922.

{¶ 64} Thus, viewing the evidence in a light most favorable to the prosecution, we cannot say that any rational trier of fact could have found that the essential element of serious physical harm was proven beyond a reasonable doubt. In reaching this conclusion, we note that there is a difference between serious physical harm and physical harm. *See* R.C. 2901.01(A)(3) ("physical harm to persons" is defined as "any injury * * * regardless of its gravity or duration"). While Miller's affirmative act of abuse undoubtedly caused his minor daughter physical

harm and subjected her to the substantial risk of serious physical harm, the record does not contain sufficient evidence to warrant the enhancement to a felony of the second degree pursuant to R.C. 2919.22(E)(2)(d). Miller's conviction for child endangering in violation of R.C. 2919.22(B)(1) must be modified to reflect the lesser degree on which conviction was appropriate, i.e., a misdemeanor of the first degree. R.C. 2945.79(D). *See also State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶ 28*; State v. Mallory*, 8th Dist. Cuyahoga No. 111115, 2022-Ohio-3667, ¶ 45, citing *State v. Easterling*, 2019-Ohio-2470, 139 N.E.3d 497, ¶ 73 (2d Dist.).

{¶ 65} The first assignment of error is overruled in part, sustained in part.

### B. Manifest Weight of the Evidence

{¶ 66} In the second assignment of error, Miller argues his conviction for gross sexual imposition is against the manifest weight of the evidence. While acknowledging that "the instant case poses a difficult hurdle for [him] to prevail on a manifest weight of the evidence error," Miller nonetheless contends that "the lack of evidence corroborating [R.M.]'s accusations with respect to Count 2 must create the same level of reasonable doubt the jurors found with respect to Counts 1 and 3." Miller does not challenge the weight of the evidence supporting his child endangering convictions.

{¶ 67} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12, citing *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (1997). When considering Miller's claim that a conviction is

against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.* at 387, quoting *Martin* at 175.

{¶ 68} In addition, a trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100. Thus, a conviction is not against the manifest weight of the evidence "solely because the jury heard inconsistent or contradictory testimony." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 72, citing *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38; *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.) ("A defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness's testimony are not credible or were inconsistent or contradictory."); *see also State v.*

*Mann,* 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37 ("'While the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'"), quoting *State v. Nivens,* 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 7 (May 28, 1996).

{¶ 69} As stated, Miller was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4). The statute provides that "[n]o person shall have sexual contact with another, not the spouse of the offender" when the other person "is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶ 70} "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). In determining whether sexual contact occurred, "'there is no requirement that there be direct testimony regarding sexual arousal or gratification.'" *In re D.W.,* 8th Dist. Cuyahoga No. 110960, 2022-Ohio-1407, ¶ 23, quoting *State v. Tate,* 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 19. "'The purpose of the contact may be inferred from the type, nature, and circumstances of the contact.'" *In re D.W.* at ¶ 23, quoting *State v. Fears,* 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 65.

{¶ 71} In this case, Count 2 of the indictment stemmed from R.M.'s allegation that Miller touched her vagina with his bare hand in the middle of the night when she was in elementary school. In challenging the state's burden of persuasion, Miller

first suggests that his gross-sexual-imposition conviction is against the manifest weight because the jury found him not guilty of the rape and gross-sexual-imposition offenses charged in Counts 1 and 3 of the indictment. Miller "respectfully submits that the lack of any evidence corroborating [R.M.'s] accusations with respect to Count 2 must create the same level of reasonable doubt the jurors found with respect to Counts 1 and 3."

{¶ 72} We find no merit to Miller's position. As this court has explained:

> Juries can reach inconsistent verdicts for any number of reasons, including mistake, compromise, and leniency. * * * [I]t would be incongruous for a defendant to accept the benefits of an inconsistent verdict without also being required to accept the burden of such verdicts.

*State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 40, quoting *State v. Taylor*, 8th Dist. Cuyahoga No. 89629, 2008-Ohio-1626, ¶ 10. Ohio courts have therefore "rejected the argument that inconsistent verdicts would render a defendant's conviction against the manifest weight of the evidence." *Id.*, citing *State v. Jones*, 8th Dist. Cuyahoga No. 108050, 2019-Ohio-5237, ¶ 33, citing *State v. Norman*, 10th Dist. Franklin No. 10AP-680, 2011-Ohio-2870, ¶ 14. Thus, contrary to Miller's contention on appeal, the fact that he was found not guilty of Counts 1 and 3 does not undermine confidence in the jury's resolution of Count 2. *See State v. Nicholson*, 8th Dist. Cuyahoga No. 110522, 2022-Ohio-374, ¶ 49. The trier of fact was free to believe all of R.M.'s testimony regarding the inappropriate touching of her erogenous zone, while simultaneously finding Miller not guilty of the offenses that stemmed from a subsequent incident.

{¶ 73} We further reject Miller's assertion that his conviction is against the manifest weight of the evidence due to the lack of corroborating physical evidence or eyewitness testimony. It is well-settled that a "conviction may rest solely on the testimony of a single witness, if believed, and there is no requirement that a witness' testimony be corroborated to be believed." *See, e.g., State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 38; *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 43 (8th Dist.); *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 84 (4th Dist.). With that stated, however, we find the evidence corroborates significant aspects of R.M.'s testimony. For instance, R.M.'s siblings confirmed that Miller routinely isolated R.M. from her friends and family, and often forced her to sleep in his bed when their mother was away from the household.

{¶ 74} Viewing the record in its entirety, we find no basis to conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. In this case, R.M.'s testimony concerning Miller's conduct was consistent and sufficiently detailed. R.M., who was under the age of 13 at the time of the incidents, testified that Miller intentionally touched the outside of her vagina with his hand on numerous occasions in the middle of the night. She clarified that "[Miller's] hand would be inside of [her] underwear rubbing and moving around the outside" of her vagina. (Tr. 138.) R.M. further recalled her emotional reaction to Miller's conduct, stating that she was "scared," and "very confused." R.M. explained that she knew it "was

really, really bad and wrong," and that she would pretend to be asleep in an effort to dissuade Miller's conduct.

{¶ 75} Although R.M. was reluctant to make a formal complaint against Miller until 2019, she explained that she did not fully comprehend the nature of Miller's conduct until she was much older. By that time, R.M. was embarrassed to share her experiences publicly and was worried Miller would cause her further harm if she went to the authorities. R.M. further addressed her reluctance to tell H.D. the truth about Miller's conduct when provided an opportunity to do so. The jury was presented with all pertinent information regarding R.M.'s delayed police report and was in the best position to weigh the credibility of her testimony and her accounting of Miller's conduct. Under these circumstances, we find Miller's conviction for gross sexual imposition is not against the manifest weight of the evidence.

{¶ 76} The second assignment of error is overruled.

### C. Joinder of Charges

{¶ 77} In the third assignment of error, Miller argues the trial court committed reversible error by failing to sever the charges against him and by admitting evidence of prior bad acts. Miller contends that he was unduly prejudiced by the state's decision to indict him "on separate and disparate offenses in one charging instrument and joining those offenses in one trial."

{¶ 78} Under Crim.R. 8(A), "[t]wo or more offenses may be charged in the same indictment * * * if the offenses charged * * * are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan,

or are part of a course of criminal conduct." The Ohio Supreme Court has held that joinder "is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish the inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

{¶ 79} Crim.R. 14 allows for severance of properly joined offenses if the defendant can show prejudice. "If it appears that a defendant * * * is prejudiced by * * * joinder for trial together of indictments * * *, the court shall order * * * separate trial[s] of [the] counts * * *." *Id*. "The defendant * * * bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance." *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29. "While there is always the possibility of prejudice from joinder of offenses, once the state has concluded its case, the defendant bears the burden of demonstrating actual prejudice from the joinder." *State v. Cisternino*, 8th Dist. Cuyahoga No. 66387, 1994 Ohio App. LEXIS 4856 (Oct. 27, 1994).

{¶ 80} The state can refute a defendant's claim of prejudice by joinder of multiple offenses in two ways (1) a showing that the evidence of each crime is simple and direct (the "joinder test"), or (2) evidence of the other crimes would be admissible even if the counts were severed (the "other acts" test). *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). When the evidence is "simple and direct," an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of the crimes as other acts under Evid.R. 404(B). *Id*. Thus, if the state can meet the requirements of the "joinder test," it need not meet the requirements of the

stricter "other acts test." *State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, ¶ 66, citing *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

{¶ 81} "Simple and direct" evidence means the evidence of each crime is "so clearly separate and distinct as to prevent the jury from considering evidence of [one crime] as corroborative as the other." *State v. Belle*, 8th Dist. Cuyahoga Nos. 107046 and 107300, 2019-Ohio-787, ¶ 25, citing *State v. Quinones*, 11th Dist. Lake No. 2003-L-015, 2005-Ohio-6576, ¶ 48. Evidence is "simple and direct" if the trier of fact is capable of segregating the proof required for each offense. *Belle* at id., citing *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 39 (10th Dist.).

{¶ 82} The object of the "simple and direct" test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other. *State v. Echols*, 128 Ohio App.3d 677, 694, 716 N.E.2d 728 (1st Dist.1998). However, "[a] trier of fact is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 33. Thus, "Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof." *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 16, citing *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33.

{¶ 83} Generally, "[w]e review the trial court's ruling on joinder for an abuse of discretion." *State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, ¶ 15. In this case, however, Miller did not seek severance pursuant to Crim.R. 14 and has waived all but plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 64. "[A]n error affects substantial rights only if it 'affected the outcome of the trial.'" *Id.*, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Courts take "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 84} After careful consideration, we find the allegations levied against Miller relied on evidence that was sufficiently simple and direct. In this case, there is nothing in the record to suggest the jury was confused by the evidence or was improperly influenced by the cumulative effect of the joinder. Although the victims named in the indictment were members of Miller's family, the alleged conduct was separated in time and involved unrelated facts and circumstances. The evidence supporting each offense was distinct and uncomplicated, and the state's witnesses discussed the evidence relating to each victim separately, succinctly, and without significant overlap or conflation of proof. Viewed in its entirety, there was little

danger that the jury would confuse the evidence or improperly consider the evidence of each victim's accusations as corroborative of the others. Indeed, the jury found Miller not guilty of Counts 1, 3, and 6, thereby demonstrating their ability to consider the offenses independently and readily segregate the evidence supporting each charge. *See State v. Bonneau*, 8th Dist. Cuyahoga No. 97565, 2012-Ohio-3258, ¶ 22 (the jury's not guilty verdict as to the counts relating to one victim and its guilty verdicts as to the counts relating to another demonstrated that the jury was able to separate the evidence and considered each victim separately).

{¶ 85} Because the evidence adduced at trial was simple and direct, we need not consider whether the state met the "other acts" test for joinder. Accordingly, we conclude the trial court did not commit plain error by permitting the state to join the offenses for trial.

{¶ 86} Notwithstanding the foregoing analysis, we note that Miller further argues the trial court erred by permitting R.M., Ra.M., and H.M. to describe "anecdotal tales of Miller's harsh punishment" when they were children. Miller contends that the testimony relating to uncharged incidents of discipline was irrelevant, highly prejudicial, and inadmissible under Evid.R. 404(B). Again, Miller did not object to the introduction of this testimony and has waived all but plain error.

{¶ 87} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In general, "[e]vidence that [a defendant] committed a

crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15. However, evidence of other crimes, wrongs, or acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

{¶ 88} To determine whether other-acts evidence is admissible, the court conducts a three-step analysis (1) the court considers whether the other-acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence (Evid.R. 401); (2) the court considers whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B); and (3) finally, the court considers whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice. *Williams* at ¶ 20.

{¶ 89} The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. The court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence

that is admissible for a permissible purpose. *Hartman* at ¶ 22, citing *Williams* at ¶ 17.

{¶ 90} In this case, the state asked R.M., H.M., and Ra.M. to explain the nature of Miller's parenting philosophy, including his personal beliefs about discipline, his methods of punishment, and his potential triggers. In doing so, R.M., H.M., and Ra.M. were each questioned about Miller's temper and specific instances of discipline in the household. For example, R.M. described an incident where Miller "beat" her and Ra.M. after he learned that R.M. was dating a boy behind her parents' back. They further described separate instances where Miller had beaten them over "little things," including an incident where Ra.M. placed a sticker on a desk, an incident where a piece of tile was broken, and an incident where a child had taken a doughnut without asking. (Tr. 125-126, 210.)

{¶ 91} Viewing the record in its entirety, we cannot say the trial court committed plain error by permitting the state to explore Miller's parenting philosophy and examples of his strict discipline during its case-in-chief. In this case, Miller was questioned extensively about his relationship with his children and his perspectives on parenting. Miller openly discussed his methods of discipline and his use of a belt or paddle to whip his children. He further admitted to going overboard with his discipline in the past. Thus, even if this court were to construe the testimony about uncharged acts of discipline as inadmissible other-acts evidence, we are unable to conclude that, but for the challenged testimony, the outcome of Miller's trial clearly would have been different.

{¶ 92} We further note that the jury, as the trier of fact, was "entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void — without knowledge of the time, place and circumstances of the acts which form the basis of the charge.'" *State v. Wilkinson*, 64 Ohio St.2d 308, 317, 415 N.E.2d 261 (1980), quoting *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir.1977), *cert. denied*, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246; *see also State v. David*, 1st Dist. Hamilton No. C-210227, 2021-Ohio-4004, ¶ 14-15. In this case, the appropriateness of Miller's parenting practices was highly contested throughout trial. The jury was entitled to hear evidence that would allow them to gather "a complete picture of what occurred" in Miller's household and fully comprehend the acts that formed the immediate background of the charged crimes. *See id.* at ¶ 318; *see also State v. Evans*, 8th Dist. Cuyahoga No. 108648, 2020-Ohio-3968, ¶ 108-109; *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702, ¶ 140 (8th Dist.*); Cleveland v. Lowery*, 8th Dist. Cuyahoga No. 103722, 2016-Ohio-5626, ¶ 22; *State v. Johnson*, 8th Dist. Cuyahoga No. 83317, 2004-Ohio-2698, ¶ 27. In this regard, the challenged testimony provided the jury with insight into relevant issues, including Miller's relationship with his children, their fear of Miller, and the factors that caused R.M. and H.M.'s delayed disclosure to the authorities. The background information was not intended to show Miller acted in conformity with his undisputed, past methods of discipline. Rather, the evidence was merely introduced to provide meaning to the victims' testimony and context to the events leading to the charged offenses.

{¶ 93} The third assignment of error is overruled.

## D. Ineffective Assistance of Counsel

{¶ 94} In the fourth assignment of error, Miller argues defense counsel rendered ineffective assistance of counsel by (1) failing to move for a severance of the charges, and (2) failing to object to the state's introduction of impermissible evidence in violation of Evid.R. 404(B).

{¶ 95} To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 96} Based on our resolution of the previous assignments of error, Miller cannot establish a claim for ineffective assistance of counsel. Had defense counsel filed a motion to sever pursuant to Crim.R. 14 or raised a timely objection to the alleged other-acts evidence, the motion to sever would have been denied and the evidentiary objection would have been overruled. Moreover, we cannot say the outcome of Miller's trial would have been different had defense counsel raised the issue of joinder or otherwise challenged the allegedly inadmissible testimony. Miller, therefore, has failed to establish counsel's deficient performance or resulting prejudice.

{¶ 97} The fourth assignment of error is overruled.

## E. Felony Sentencing

{¶ 98} In the fifth assignment of error, Miller argues the trial court erred by imposing a sentence that was contrary to law on Count 4 "as it exceeded the term permitted by statute." Miller further argues the trial court failed to make the necessary findings to impose consecutive sentences pursuant to R.C. 2929.14(C)(4).

{¶ 99} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either (1) the record does not support the sentencing court's findings under certain statutes, or (2) the sentence is otherwise contrary to law. *Id*. at ¶ 9, citing R.C. 2953.08(G)(2). Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id*. at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 100} A criminal "sentence is a penalty or combination of penalties imposed on a defendant as punishment for the offense he or she is found guilty of committing." *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, ¶ 28. Fundamentally, "[c]rimes are statutory, as are the penalties." *Colegrove v. Burns*, 175 Ohio St. 437, 438, 195 N.E.2d 811 (1964). It is well recognized that "[a] trial court has 'no inherent power to create sentences, and the only sentence that a

trial judge may impose is that provided for by statute.'" *State v. Bursley*, 6th Dist. Huron No. H-19-014, 2021-Ohio-1613 ¶ 9, quoting *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, 134 N.E.3d 164, ¶ 18, citing *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 10, 12. Thus, a sentence is contrary to law when it is "in violation of statute or legal regulations at a given time." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34, citing *Black's Law Dictionary* 328 (6th Ed.1990); *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22.

{¶ 101} In this case, the trial court sentenced Miller to terms of imprisonment on the third-degree felony offenses of gross sexual imposition (Count 2) and child endangering (Count 4). Miller does not challenge the five-year prison sentence imposed on Count 2. Miller limits his sentencing argument to the eight-year term of imprisonment imposed on Count 4. He contends that the sentence exceeded the applicable statutory range for third-degree felonies.

{¶ 102} R.C. 2929.14(A)(3) sets forth the applicable sentencing ranges for third-degree felony offenses. The statute provides, in pertinent part:

> For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

R.C. 2929.14(A)(3)(b). In this case, the child-endangering offense charged in Count 4 is not an offense for which R.C. 2929.14(A)(3)(a) applies. Accordingly, the maximum term of imprisonment Miller faced on Count 4 was 36 months.

{¶ 103} After careful consideration, we agree with Miller's contention that the sentence imposed on Count 4 is clearly and convincingly contrary to law. The eight-year prison term is well beyond the permissible statutory range for third-degree felony offenses. In reaching this conclusion, we are cognizant that the trial court's failure to comply with the mandates of R.C. 2929.14(A)(3) was not premised on a misinterpretation of the statute or the applicable sentencing range for third-degree felonies. Rather, the sentencing error was associated with the court's decision to proceed with sentencing on Count 4 as opposed to Count 5.

{¶ 104} It is well settled that "if the defendant has been found guilty of allied offenses, the trial court must direct the prosecutor to elect an offense to pursue for sentencing, and then impose a sentence that is appropriate for the state's chosen offense." *State v. Berry*, 6th Dist. Lucas No. L-19-1275, 2021-Ohio-2249, ¶ 26, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 20, 24 (The intent of R.C. 2945.21 is "clear that it is the state that chooses which of the allied offenses to pursue at sentencing * * *"; "[w]hen the state elects which of the two allied offenses to seek sentencing for, the court must accept the state's choice and merge the crimes into a single conviction for sentencing * * * and impose a sentence that is appropriate for the merged offense." (Internal citation omitted.)).

{¶ 105} In this case, the trial court determined that the child-endangering offenses were allied offenses of similar import and the state elected to proceed with sentencing on the higher felony offense charged in Count 5 of the indictment. Despite the state's request, however, the trial court unambiguously sentenced Miller

to eight years in prison on Count 4 and incorporated its sentence on the third-degree felony offense into the sentencing journal entry. Because the trial court was required to accept the state's election to proceed with sentencing on Count 5, we find the trial court committed reversible error by imposing a sentence on the lesser-degree felony offense in Count 4. *See State v. Workman*, 8th Dist. Cuyahoga No. 93998, 2010-Ohio-4891, ¶ 23-27 (rejecting the defendant's assertion that the trial court has the discretion to "override the state's election" on which allied offense to pursue at sentencing); *State v. Martin*, 9th Dist. Summit No. 28563, 2017-Ohio-8851, ¶ 8 ("[T]he State controls which allied offense a defendant will be sentenced on, and the trial court must accept the State's election.").

{¶ 106} We acknowledge the state's contention on appeal that the trial court intended to impose a sentence on the second-degree felony offense of child endangering but inadvertently referenced Count 4 instead of Count 5 at the time of sentencing. This is most likely what occurred. With that stated, however, our review is limited to the record before us. In this case, the trial court imposed a sentence on the third-degree felony offense charged in Court 4 and incorporated similar language into the sentencing journal entry. ("State elects to proceed as to Count 4, F3: 8 year(s).") Because "a sentencing court speaks only through its judgment entry of sentence, not its oral pronouncements[,]" *State v. Swiergosz*, 197 Ohio App.3d 40, 2012-Ohio-830, 965 N.E.2d 1070, ¶ 49 (6th Dist.), citing *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 47, we must presume that the trial court intended to sentence Miller on Count 4 of the indictment. Similarly, "a

nunc pro tunc entry reflects what a court 'actually decided, not what the court might or should have decided or what the court intended to decide.'" *State v. Wright*, 8th Dist. Cuyahoga No. 107213, 2019-Ohio-1361, ¶ 18, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995). Thus, whether the trial court intended to sentence Miller on Count 5, but mistakenly referred to Count 4, is immaterial to our review.

{¶ 107} Based on the foregoing, we vacate Miller's sentences on Counts 4. On remand, the state shall elect the child-endangering offense on which it wishes Miller to be sentenced, and the trial court shall impose a sentence that is appropriate for that offense. For the purposes of clarity, we reiterate that insufficient evidence supported the elevation of Count 5 to a felony of the second degree.

{¶ 108} The fifth assignment of error is sustained. Miller's arguments concerning the court's compliance with R.C. 2929.14(C)(4) are rendered moot by our resolution of this assigned error.

{¶ 109} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

ANITA LASTER MAYS, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR